Annie S. Wang-Poloskov (SBN 243027)
annie@wangalc.com
J. Andrew Coombs, Of Counsel (SBN 123881)
andy@wangalc.com
Wang Law Corporation
1150 Foothill Boulevard, Suite E
La Cañada Flintridge, California 91011
Telephone:   (818) 500-3200
Facsimile:   (818) 500-3201

Attorneys for Plaintiffs
Sanrio Company, Ltd. and Sanrio, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sanrio Company, Ltd. and Sanrio, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Seoul Tower Sweets LLC d/b/a Right Lites and RightLites, Brent Heltsley, Tingting Heltsley, and Does 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 23-00924-AB (PVCx)<br><br>NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATIONS AND EXHIBITS IN SUPPORT<br><br>Court:   Hon. André Birotte Jr.<br>Date:    October 20, 2023<br>Time:    10:00 a.m. |

TO THE COURT AND TO DEFENDANTS:

PLEASE TAKE NOTICE that on October 20, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Hon. André Birotte Jr., United States District Judge, located at Courtroom 7B, of the United States District Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, California 90012, Plaintiffs Sanrio Company, Ltd. and Sanrio, Inc. (collectively "Plaintiffs") will and hereby do move the Court for entry of default judgment against Defendants Seoul Tower Sweets LLC d/b/a Right Lites and RightLites, Brent Heltsley ("B. Heltsley"), and Tingting Heltsley ("T. Heltsley") (collectively "Defendants") for copyright statutory damages in the sum total of Six Hundred Thousand Dollars ($600,000.00), trademark statutory damages in the sum total of Three Hundred Thousand Dollars

($300,000.00), attorneys' fees in the sum total of Fifteen Thousand Six Hundred Dollars ($15,600.00), and post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a).  Plaintiffs also seek entry of a permanent injunction prohibiting Defendants from further infringement of Plaintiffs' copyrights and trademarks.

By this Notice of Motion and Motion for Default Judgment, the Memorandum of Points and Authorities attached thereto, and the Declarations of Heather Holdridge, Yumi Nancy Suemori and Annie S. Wang-Poloskov, and exhibits attached thereto, Plaintiffs request that a default judgment be entered based on the following points:

1. Defendants are not infants or incompetent persons or in the military service or otherwise exempted under the Servicemembers Civil Relief Act;

2. Defendants have not filed a response to the Complaint in the action.

3. This Notice and Motion for Default Judgment, along with all supporting papers is being served on Defendants on September 12, 2023, by placing true and correct copies thereof in a sealed envelope addressed to Defendants at the same address where service of process was completed.

4. Plaintiffs elect statutory damages under the Copyright Act and Lanham Act.

5. Plaintiffs are entitled to judgment against Defendants based on violation of 17 U.S.C. § 501 *et seq.* (copyright infringement), 15 U.S.C. § 1051 et seq. (trademark infringement and unfair competition), and 28 U.S.C. § 1331 and § 1338.

6. The principal amount of the judgment sought as against Defendants is copyright statutory damages in the amount of $600,000.00 and trademark statutory damages in the amount of $300,000.00 for Defendants' liability to Plaintiffs as set forth in the accompanying Memorandum of Points and Authorities, supporting declarations and exhibits, and as authorized by 17 U.S.C. § 504 and 15 U.S.C. § 1117.  Plaintiffs also seek $15,600.00 in

attorneys' fees pursuant to 17 U.S.C. § 505 and Local Rule 55-3.  Plaintiffs also seek entry of a permanent injunction prohibiting Defendants from further infringement of any of Plaintiffs' copyrights and trademarks.  Plaintiffs further seek interest on the judgment calculated pursuant to 28 U.S.C. § 1961(a)

7.  This motion is based on this Notice of Motion, Motion for Entry of Default Judgment and accompanying Memorandum of Points and Authorities, the Declarations, and exhibits attached thereto, the exhibits and evidence to be presented at the hearing hereon, the pleadings, records and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

Dated:  September 12, 2023                    Wang Law Corporation


                                              By: ___/s/ Annie S. Wang-Poloskov_____
                                                  Annie S. Wang-Poloskov
                                                  J. Andrew Coombs, Of Counsel
                                              Attorneys for Plaintiffs
                                              Sanrio Company, Ltd. and Sanrio, Inc.

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

# **TABLE OF CONTENTS**

INTRODUCTION AND STATEMENT OF FACTS ............................................ 1

A.    Plaintiffs ............................................................................................ 2

B.    Defendants' Infringing Activities ........................................................ 3

C.    This Action ......................................................................................... 5

ARGUMENT ............................................................................................... 5

A.    Default Judgment Is Properly Entered Against Defendants .............. 5
1.    Plaintiffs' Complaint Sufficiently Charges Defendants with Copyright Infringement .................................................... 6
2.    Plaintiffs' Complaint Sufficiently Charges Defendants with Trademark Infringement and Unfair Competition ................... 7
3.    All Of The Other Eitel Factors Have Been Met .................... 11

B.    Plaintiffs Have Met The Procedural Requirements For Entry Of A Default Judgment ........................................................................... 13

C.    Plaintiffs Are Entitled To A Permanent Injunction ........................ 14

D.    Plaintiffs Are Entitled To Statutory Damages Based On Defendants' Willful Infringement Of Their Copyrights and Trademarks ........... 16
1.    Defendants' Conduct Was Willful ...................................... 18
2.    Plaintiffs Are Entitled to $600,000.00 for Defendants' Willful Copyright Infringement ........................................ 19
3.    Plaintiffs Are Entitled to $300,000.00 for Defendants' Willful Trademark Infringement ......................................... 21

E.    Plaintiffs Are Entitled to Reasonable Attorneys' Fees ................... 23
1.    Plaintiffs Are Entitled to Attorneys' Fees Under the Copyright Act ............................................................. 23
2.    Plaintiffs Are Entitled to Attorneys' Fees Under Local Rule 55-3 ... 24

F.    Plaintiffs Are Entitled to Interest on the Judgment ....................... 24

CONCLUSION ......................................................................................... 24

Declaration of Heather Holdridge ............................................................ 26

Declaration of Yumi Nancy Suemori ....................................................... 31

Declaration of Annie S. Wang-Poloskov .................................................. 34

## **TABLE OF AUTHORITIES**

**CASES**

A & M Records, Inc. v. General Audio Video Cassettes, Inc.,
948 F. Supp. 1449 (C.D. Cal. 1996) ....................................................... 17-18

Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,
944 F.2d 1446, 1454-55 (9th Cir. 1991) ...................................................... 8

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979) .................. 8-10

Applied Information Sciences v. eBay, Inc.,
511 F.3d 966, 969 (9th Cir. 2007) ............................................................. 7

Carte Blanche (Singapore) Pte. v. Carte Blanche International,
888 F.2d 260 (2nd Cir. 1989) ................................................................... 24

Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532 (4th Cir. 2007) ...... 14

Danning v. Lavine, 572 F.2d 1386 (9th Cir. 1978) ......................................... 6

Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696 (9th Cir. 2008) ............... 18

Discovery Communications, Inc. v. Animal Planet, Inc.,
172 F. Supp. 2d 1282, 1291 (C.D. Cal. 2001) ............................................... 24

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) ................................. 14

Eclipse Ass'n Ltd. v. Data General Corp., 894 F.2d 1114 (9th Cir. 1990) ............... 9

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986) ..................................... 5-6, 11-13

Enron Power Marketing v. Nevada Power Company,
2004 U.S. Dist. LEXIS 20351, at *21 (S.D.N.Y. 2004) .................................... 24

F. W. Woolworth Co. v. Contemporary Arts, Inc.,
344 U.S. 228 (1952) ......................................................................... 20, 23

Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.
886 F.2d 1545, 1556 (9th Cir. 1989) ......................................................... 24

Geddes v. United Financial Group, 559 F.2d 557 (9th Cir. 1977) ........................ 6

Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir. 1984) ......................... 20, 22

Jackson v. Sturkie, 255 F. Supp. 2d 1096 (N.D. Cal. 2003) ............................... 15

Kloepping v. Fireman's Fund, No. C-94-2684-TEH,
1996 U.S. Dist. LEXIS 1786 (N.D. Cal. Feb. 13, 1996) ................................. 6, 13

Lamb v. Starks, No. CV-95-1732-JLQ,
1997 U.S. Dist. LEXIS 14373 (N.D. Cal. July 2, 1997) .................................... 20

_Lindy Pen Co. v. Bic Pen Corp.,_ 982 F.2d 1400, 1411 (9th Cir. 1993) ....................22

_Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,_
658 F.3d 936, 946-47 (9th Cir. 2011) ..............................................................18

_M2 Software, Inc. v. Madacy Entm't,_ 421 F.3d 1073, 1082 (9th Cir. 2005)...............9

_McCulloch v. Albert E. Price, Inc.,_ 823 F.2d 316, 323 (9th Cir. 1987) ....................24

_Mullane v. Central Hanover Trust Co.,_ 339 U.S. 306 (1950) ................................12

_N.A.S. Import Corp. v. Alentino, Ltd.,_ 968 F.2d 250 (2d Cir. 1992)........................18

_Nintendo of Am., Inc. v. Dragon Pac. Int'l,_
40 F.3d 1007, 1011 (9th Cir. 1994) ..............................................................16-17

_Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank,_
515 F.2d 1200 (5th Cir. 1975) ..........................................................................6

_Park 'n Fly v. Dollar Park & Fly,_ 469 U.S. 189, 194 (1985) ..............................14-15

_Peer Int'l Corp. v. Pausa Records, Inc.,_ 909 F.2d 1332 (9th Cir. 1990)......... 18, 22-23

_Playboy Enter. Inc. v. Baccarat Clothing Co., Inc.,_
692 F.2d 1272, 1275 (9th Cir. 1982) ................................................................17

_Polo Fashions, Inc. v. Dick Bruhn, Inc.,_ 793 F.2d 1132 (9th Cir. 1986) ..................16

_Qualitex Co. v. Jacobson Prods. Co., Inc.,_ 514 U.S. 159, 166 (1995) ......................10

_Reebok Int'l Ltd. v. Jemmett,_
Civ. No. 87-1415 BTM, 1990 U.S. Dist. LEXIS 18519 (S.D. Cal. 1990)..................6

_Shaw v. Lindheim,_ 919 F.2d 1353 (9th Cir. 1990)...............................................6

_State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.,_
425 F.3d 708, 721 (9th Cir. 2005) ....................................................................22

_Taylor Corp. v. Four Seasons Greetings, LLC,_ 315 F.3d 1039 (8th Cir. 2003).........16

_Televideo Systems, Inc. v. Heidenthal,_ 826 F.2d 915 (9th Cir. 1987) ......................12

_Transgo, Inc. v. Ajac Transmission Parts Corp.,_
768 F.2d 1001, 1023 (9th Cir. 1985) ................................................................18

_Twentieth Century Fox Film Corp. v. MCA, Inc.,_ 715 F.2d 1327 (9th Cir. 1983)......7

_Two Pesos, Inc. v. Taco Cabana, Inc.,_ 505 U.S. 763, 769 (1992)..................... 7-8, 10

_Universal City Studios, Inc. v. Film Ventures International, Inc.,_
543 F. Supp. 1134, 1139 (C.D. Cal. 1982)..........................................................15

_West Pub. Co. v. Mead Data Cent., Inc.,_
799 F.2d 1219 (8th Cir. 1986) ........................................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

William R. Warner & Co. v. Eli Lilly & Co.,
265 U.S. 526 (1924).............................................................................16

**STATUTES**

15 U.S.C. § 1051..........................................................................ii, 5, 8

15 U.S.C. § 1114...................................................................................7

15 U.S.C. § 1115...................................................................................7

15 U.S.C. § 1117..................................................... ii, 1, 17, 21-22

17 U.S.C. § 101................................................................................2, 5

17 U.S.C. § 410(c).............................................................................6

17 U.S.C. § 501..................................................................................ii

17 U.S.C. § 504..................................... ii, 1, 6, 11, 17, 19-20

17 U.S.C. § 505.......................................................... iii, 1, 23-24

28 U.S.C. § 1331.............................................................................. ii

28 U.S.C. § 1338.............................................................................. ii

28 U.S.C. § 1961(a)............................................... ii-iii, 2, 24

**RULES**

Fed. R. Civ. P. 8(d) .................................................................6, 12

Fed. R. Civ. P. 54(c) ......................................................................14

Fed. R. Civ. P. 55(a)(b)...........................................................13-14

Local Rule 55-3 ............................................................. iii, 1, 24

**OTHER**

Nimmer & Nimmer, Nimmer on Copyright,
§ 13.01 [B] at 13:11-12.......................................................................7

4 Nimmer & Nimmer, Nimmer on Copyright,
§14.04[b][1][a] (2002) ......................................................................20

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

### INTRODUCTION AND STATEMENT OF FACTS

Defendants Seoul Tower Sweets LLC d/b/a Right Lites and RightLites, Brent Heltsley ("B. Heltsley"), and Tingting Heltsley ("T. Heltsley") (collectively "Defendants"), are involved in the wholesale manufacture, distribution, promotion and/or sale of a wide variety of illegitimate goods through a network of stores infringing the copyrights and trademarks of Plaintiffs Sanrio Company, Ltd. ("Sanrio Co.") and Sanrio, Inc. ("Sanrio") (collectively "Plaintiffs").  In flagrant disregard for the procedures of this Court, Defendants have not properly appeared in response to valid and effective service of process upon them and additional notice of these proceedings.

Defendants' defaults have deprived Plaintiffs of the ability to prove a specific amount of actual damages.  Accordingly, Plaintiffs rely on the statutory damages provisions contained in the Copyright Act, for each of not less than twenty copyrights, and provisions contained in the Lanham Act, for each of not less than three trademarks, infringed by Defendants as evidenced by multiple investigative purchases and dozens of confirmed, unauthorized samples, including those obtained well after Defendants were put on notice regarding their unauthorized activities.  See Ex. M. to Declaration of Yumi Nancy Suemori ("Suemori Decl.").  Among other things, Defendants also used certain of Plaintiffs' characters and trademarks on co-branded "RightLites" items, and also on their shopping bags and business cards to promote their business and multiple locations as a whole.  Complaint ("Compl.") at ¶¶ 21-22.

Now, Plaintiffs seek judgment, including an award of copyright statutory damages in the amount of Six Hundred Thousand Dollars ($600,000.00) pursuant to 17 U.S.C § 504(c), trademark statutory damages in the amount of Three Hundred Thousand Dollars ($300,000.00) pursuant to 15 U.S.C. § 1117, attorneys' fees in the sum total of Fifteen Thousand Six Hundred Dollars ($15,600.00) pursuant to 17 U.S.C. § 505 and Local Rule 55-3, and interest on the judgment calculated pursuant

- 1 -

to 28 U.S.C. § 1961(a).  Plaintiffs also seek entry of a permanent injunction prohibiting Defendants and those acting in concert with them, from further infringement of Plaintiffs' copyrights and trademarks.

**A.    <u>Plaintiffs</u>**

Sanrio is a corporation, duly organized and existing under the laws of California, having its principal place of business in Torrance, California.  Compl. at ¶ 4.  Sanrio, at all relevant times has been, the exclusive licensee of Sanrio Co., a Japanese Corporation.  <u>Id.</u>  Sanrio is a wholly-owned subsidiary of Sanrio Co. <u>Id.</u>

For more than fifty (50) years, Sanrio Co. has been engaged in the business of manufacturing, distributing and selling a wide range of products featuring, without limitation, character artwork created, developed and designed by Sanrio Co. for use by children and adults.  Compl. at ¶ 5.  A significant source of revenue for Plaintiffs is the merchandising and licensing of distinctive elements bearing character artwork, including but not limited to *Hello Kitty, Keroppi, My Melody, Pochacco, Cinnamoroll, Pompompurin, Kuromi, Badtz Maru, Little Twin Stars, Spottie Dottie, Pekkle, Monkichi,* and *Sugar Bunnies* (individually and collectively referred to as the "Sanrio Characters" or "Plaintiffs' Characters").  <u>Id.</u> at ¶ 6; Suemori Decl. at ¶ 4.

The business associated with products using the Sanrio Characters sold in the United States is substantial.  Compl. at ¶ 7.  The appearance and other features of the Sanrio Characters are inherently distinctive and serve to identify Plaintiffs as the source of products bearing the Sanrio Characters.  <u>Id.</u>  The design, configuration and distinctive features of the Sanrio Characters and other Sanrio Co. copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as "Plaintiffs' Copyrights") are wholly original with Sanrio Co. and, as fixed in various tangible media are copyrightable subject matter under the United States Copyright Act, 17 U.S.C., §§ 101 et seq.  <u>Id.</u>

Sanrio Co. has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to Plaintiffs'

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

Copyrights and Sanrio Co. owns one or more certificates of registration for works in which each of Plaintiffs' Copyrights appear.  Compl. at ¶ 8; Suemori Decl. at Ex. K. Products featuring Plaintiffs' Copyrights manufactured, sold and distributed by Sanrio Co. or under its authority have been manufactured, sold and distributed in conformity with the provisions of the copyright laws.  Id. at ¶ 9.  Sanrio Co. and those acting under its authority have complied with their obligations under the copyright laws and Sanrio Co. has at all times been and still is the sole proprietor or otherwise authorized to enforce all right, title and interest in and to the copyrights in each of Plaintiffs' Copyrights.  Id.

Sanrio Co. owns all right, title and interest in and to and holds exclusive right to develop, manufacture, market and sell products bearing its trademarks, trade names, service marks, artwork, characters and other distinctive elements for and incorporating the Sanrio Co. Characters in the United States ("Trademarks").  Compl. at ¶ 10; Suemori Decl. at ¶ 5, Ex. L.  Sanrio Co. engages in extensive advertising, marketing, and sales to develop and maintain the considerable goodwill it enjoys in its Trademarks and in its reputation for high quality.  Compl. at ¶¶ 11-13. The Trademarks have been used continuously from their registration dates, or earlier, until the present and at all times relevant to the claims alleged in this Complaint, and have each acquired secondary meaning in the minds of consumers throughout the United States and the world.  Id. at ¶ 12.

The Sanrio Characters, Plaintiffs' Copyrights, and Trademarks are collectively referred to herein as "Plaintiffs' Properties."

**B.    <u>Defendants' Infringing Activities.</u>**

Defendant Seoul Tower Sweets LLC ("STS") is a California corporation doing business as Right Lites and RightLites, with its principal place of business in Rialto, California.  Compl. at ¶ 14.  Defendants Brent and Tingting Heltsley are individuals believed to be residing in Rialto, California, who also had the right and ability to supervise or control the infringing activity alleged herein and that had a direct

financial interest in such activity.  Id. at ¶¶ 15-16.  The individual defendants also had knowledge or reason to know of the infringing activity and took actions which contributed to such activity.  Id.  STS and the individual defendants are collectively referred to as "Defendants."  Defendants, who are subject to the jurisdiction of this Court, all have an active role in the infringement of Plaintiffs' Properties occurring within this judicial district.  Id. at ¶¶ 14-17, 18-24.

Defendants are manufacturing, displaying, distributing, advertising, selling and/or offering to sell a multitude of unlicensed items as well as accompanying packaging, which incorporate unauthorized artwork, likenesses of characters or other logos exclusively owned and/or licensed by Plaintiffs, including the Plaintiffs' Properties ("Infringing Product(s) and Uses").  Compl. at ¶¶ 3, 18-24; Declaration of Heather Holdridge ("Holdridge Decl.") at ¶¶ 4-13, Exs. A-C, E, G-J; Suemori Decl. at ¶¶ 7-8, Ex. M.  Defendants also sold unauthorized co-branded items and used shopping bags and business cards featuring unauthorized depictions of Plaintiffs' characters and trademarks.  Compl. at ¶¶ 3, 21-22; Suemori Decl. at ¶¶ 7-8, Ex. M. Defendants are not licensed by Plaintiffs, and at all relevant times were not authorized by Plaintiffs or any authorized agent of Plaintiffs to display, advertise, manufacture, distribute, sell and/or offer for sale the Infringing Products and Uses. Compl. at ¶ 23; Suemori Decl. at ¶¶ 7-8.

Defendants were put on notice of their infringement via hand delivered letters on their stores on or about October 27, 2022.  Compl. at ¶ 19; Holdridge Decl. at ¶¶ 7, 9, Exs. D and F.  However, despite acknowledging receipt of the cease-and-desist requests, Defendants' assurances that infringing sales had ceased, and follow ups to Defendants' then settlement counsel, Defendants were again found offering, marketing, and selling unauthorized, infringing and/or counterfeit merchandise infringing on Plaintiffs' Properties on or about January 29, 2023, and again on or about April 20, 2023, at least, in multiple of their numerous retail locations.  Compl. at ¶ 20; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Declaration of Annie S. Wang-

Poloskov ("Wang Decl.") at ¶¶ 2-4.  Defendants worked together toward a common goal to maximize infringing sales without regard for Plaintiffs' rights.

Defendants have acted in willful disregard of laws protecting Plaintiffs' goodwill and related proprietary rights and have confused and deceived, or threaten to confuse and deceive, the consuming public concerning the source and sponsorship of the Infringing Products and Uses.  Compl. at ¶ 24.  Defendants are currently engaged in such uses and, unless enjoined by this Court, will continue such unauthorized uses.  Id. at ¶¶ 29, 35, 44.

**C.    This Action.**

Plaintiffs filed this action on or about May 22, 2023.  Plaintiffs' Complaint alleges violation of 17 U.S.C. § 101, *et seq.* and violation of 15 U.S.C. § 1051, *et seq.* for (i) direct copyright infringement; (ii) direct trademark infringement; and (iii) unfair competition.

Defendants were served with the Summons and Complaint on or about June 4, 2023.  Wang Decl. at ¶ 4; Docket Nos. 15-17.  To date, Defendants have not filed any responsive pleading.  Id. at ¶ 7.  Plaintiffs filed their Request for Entry of Default on or about July 31, 2023, and default was entered against Defendants on or about August 3, 2023.  Id. at ¶¶ 6-7.  Notice thereof was also served on Defendants on or about August 3, 2023.  Id. at ¶ 7.

## ARGUMENT

**A.    Default Judgment Is Properly Entered Against Defendants.**

In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit outlined the following factors to determine whether to grant default judgment:

(1) the substantive merits of plaintiff's complaint;

(2) the complaint's sufficiency;

(3) the amount of money at stake;

(4) the possibility of prejudice to plaintiff if relief is denied;

(5) the possibility of dispute as to any material facts;

(6) whether default resulted from excusable neglect; and

(7) the policy of the Federal Rules favoring decisions on the merits. Id. at 1470-72.

Each element weighs in favor of granting Plaintiffs' motion for default judgment.

**1.      Plaintiffs' Complaint Sufficiently Charges Defendants with Copyright Infringement.**

The first two Eitel factors, involving the substantive merits of the claim and the sufficiency of the complaint, require that Plaintiff's allegations "state a claim upon which [it] may recover." Kloepping v. Fireman's Fund, No. C-94-2684-TEH, 1996 U.S. Dist. LEXIS 1786, at *5 (N.D. Cal. Feb. 13, 1996) citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  Upon a defendant's default, the factual allegations of the complaint, other than those relating to the amount of damages sustained, are deemed admitted.  Fed. R. Civ. P. 8(d); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

Copyright infringement is established by showing (1) ownership of the copyright and (2) copying by the defendant.  Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990).  Defendants have the burden under 17 U.S.C. §504(c)(1)(2) of proving they had no knowledge or reason to believe that the work was protected. See Reebok Int'l Ltd. v. Jemmett, Civ. No. 87-1415 BTM, 1990 WL 261362, at *3 (S.D. Cal. 1990).  A certificate of registration made before or within five years after publication of the work is *prima facie* evidence of copyright validity and of the facts stated in the certificate. 17 U.S.C. § 410(c).  Plaintiffs have complied with the statute, timely obtaining the necessary copyrights in and to the characters and artwork at issue herein.

Plaintiffs' Complaint pleads sufficient facts to establish Defendants' liability for copyright infringement.  Plaintiffs' Complaint establishes its copyrights in and to

- 6 -

the Plaintiffs' Copyrights.  Compl. at ¶¶ 5-9, Ex. A; Suemori Decl. at ¶ 4, Ex. K.
Plaintiffs' Complaint also establishes Defendants' infringement of Plaintiffs'
Copyrights.  Compl. at ¶¶ 3, 18-30; Suemori Decl. at ¶¶ 7-8, Ex. M.

The second element, "copying," is evident.  Defendants' products bear designs
that are not just "substantially similar" to Plaintiffs' Characters, they are near
identical counterfeit copies of the Plaintiffs' Copyrights.  See M. Nimmer & D.
Nimmer, Nimmer on Copyright, § 13.01[B] at 13:11-12 (under substantial similarity
theory, similarity between two works raises inference of actual copying); Twentieth
Century Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1330 (9th Cir. 1983) (intrinsic
and extrinsic copying tests satisfied where "works are so overwhelmingly identical
that the possibility of independent creation is precluded").  Defendants' products
incorporate near identical depictions of Plaintiffs' well-known characters and
artwork as outlined by the infringement chart herein.  Compl. at ¶ 3, 18-22;
Holdridge Decl. at ¶¶ 4-13, Exs. A-C, E, G-J; Suemori Decl. at ¶¶ 7-8, Ex. M

## 2. Plaintiffs' Complaint Sufficiently Charges Defendants with Trademark Infringement and Unfair Competition

### a. Trademark Infringement.

To succeed on a claim under the Trademark Act of 1946 ("Lanham Act"), a
plaintiff must establish that its mark is valid and has been infringed.  15 U.S.C. §
1114; Applied Information Sciences v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).
A finding of liability requires proof of the likelihood of confusion.  Two Pesos, Inc.
v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).

Registration of a mark on the principal register is "prima facie evidence… of
the registrant's ownership of the mark, and of the registrant's exclusive right to use
the registered mark in commerce…" 15 U.S.C. § 1115(a); Applied Information
Sciences, 511 F.3d at 970.  Relevant registrations and their present validity and
effectiveness are alleged in the operative Complaint and herein.  Compl. at ¶¶ 10-13.

The complaint sufficiently pleads Plaintiffs' claim for trademark counterfeiting pursuant to 15 U.S.C. §§ 1051, *et seq*. Defendants, with actual and constructive knowledge of Plaintiffs' rights, adopted and used the Trademarks to promote and in or on their unauthorized products in California and in interstate commerce. Compl. at ¶¶ 3, 18-24, 31-36; Holdridge Decl. at ¶¶ 4-13. Defendants did so intentionally and their product was likely to cause confusion or mistake to the public regarding the affiliation, sponsorship, endorsement or approval of their business and/or counterfeit products. Compl. at ¶¶ 24, 32, 33. These allegations state claims for trademark counterfeiting upon which Plaintiffs may recover.

The test for infringement of a federally registered trademark under the Lanham Act is whether the alleged infringing act creates a likelihood of confusion. Two Pesos, Inc., 505 U.S. at 769; Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991). In determining likelihood of confusion, the Ninth Circuit has adopted the Sleekcraft test, balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979). These factors demonstrate Defendants' infringement:

1. Strength of the Trademark: A strong mark is granted the widest protection. Sleekcraft Boats, 599 F.2d at 349. Plaintiffs have used the Trademarks continuously for a long period of time. Each of the trademarks has also, through widespread and extensive use, acquired strong secondary meaning. Compl. at ¶¶ 10-13.

2. Class of Goods: Long after Plaintiffs' adoption and use of Plaintiffs' Properties on a diverse range of goods and/or services, Defendants have

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

duplicated the Trademarks and placed them on some of the primary classes of goods in which Plaintiffs use their marks.  Compl. at ¶¶ 18, 32.  The likelihood of confusion is heightened where as here, the goods at issue are "related or complementary."  M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1082 (9th Cir. 2005).

3.  <u>Similarity of Appearance</u>:  Defendants have capitalized on these strong, fanciful marks by copying them with little or no variation from their authorized versions.

4.  <u>Evidence of Actual Confusion</u>:  Evidence of actual confusion is unnecessary for entry of a permanent injunction, but purchases made of Defendants' unauthorized, counterfeit product evidences actual confusion as to their source and origin.  Eclipse Ass'n Ltd. v. Data General Corp., 894 F.2d 1114 (9th Cir. 1990).  Actual confusion can also be inferred from a side-by-side comparison of legitimate product incorporating the Trademarks and Defendants' Infringing Product.  Suemori Decl. at Ex. M.

5.  <u>Marketing Channels</u>:  Defendants' product is specifically created for retail sale within the domestic United States market – the primary market for licensed merchandise bearing the subject marks.  Plaintiffs sell genuine product via retail locations also, resulting in significant overlap in advertising markets, which increases the likelihood of confusion.  M2 Software, Inc., 421 F.3d at 1083; Suemori Decl. at ¶ 6.

6.  <u>Type of Goods/Care Likely Exercised by Purchasers</u>:  Defendants duplicated Plaintiffs' trademarks so that consumers cannot differentiate between illegal and legitimate products at the point of purchase and tend to believe that Defendants' merchandise is authorized, sponsored, approved or associated with Plaintiffs.  Compl. at ¶¶ 24, 32, 40.

7.  <u>Defendants' Intent</u>:  Defendants' intention to confuse the public is self-evident.  When a person knowingly adopts a mark identical to another's, the

- 9 -

Court may infer that person's intent to confuse.  <u>Sleekcraft Boats</u>, 599 F.2d at 354.

8.  <u>Likelihood of Expansion of Product Lines</u>:  Defendants' intent to expand their product line is irrelevant as Defendants are operating an illegitimate business involving counterfeit goods.

While no one factor enumerated above is dispositive, together they help to determine whether the public is likely to be confused as a result of a defendant's infringing use.  Plaintiffs have sufficiently alleged in their pleadings a likelihood of confusion under the <u>Sleekcraft</u> factors for their trademark infringement claim.

b.  <u>Unfair Competition.</u>

The Lanham Act protects the public from confusion as to the origin of products and the rights owner from misappropriation of unregistered trademarks, registered trademarks and trade dress.  <u>Two Pesos, Inc.</u>, 505 U.S. at 768.  A plaintiff must show that: (1) the mark is distinctive (inherently or through acquired secondary meaning); (2) the mark is non-functional; and (3) consumers are likely to confuse the infringing product with the original.  <u>Id.</u> at 769.  These elements are satisfied here.

Inherently distinctive marks include those which are "suggestive," "arbitrary" or "fanciful."  <u>Id</u>.  Generic or descriptive marks can only be distinctive where secondary meaning is present.  <u>Id.</u>  Each of the trademarks used on Defendants' infringing products is "fanciful" such that proof of "secondary meaning" is not required.  In each case, however, through extensive and widespread use, the Trademarks have acquired secondary meaning in the minds of consumers throughout the United States and the world.  Compl. at ¶ 13.  The marks undeniably distinguish Plaintiffs' products from others in the stream of commerce.  <u>Two Pesos</u>, 505 U.S. at 769.

The marks at issue are non-functional.  A mark is functional when it "is essential to the use or purpose of the article or if it affects the cost or quality of the article."  <u>Qualitex Co. v. Jacobson Prods. Co., Inc.</u>, 514 U.S. 159, 166 (1995).  The

- 10 -

Trademarks are design elements which enhance the infringing product offered by Defendants, including their "co-branded" products, labeling, and bags, which falsely suggest Defendants and/or their unauthorized products are part of an official collaboration with Plaintiffs.  Compl. at ¶¶ 21-22, 37-47.  Under no plausible argument can any functionality be asserted for Defendants' use of the Trademarks in this case.

Likelihood of confusion is equally evident as set forth above.  A finding of Lanham Act Unfair Competition is similarly warranted.

### 3.    All Of The Other Eitel Factors Have Been Met

a.    <u>Amount at Stake</u>:  Under the third <u>Eitel</u> factor, the Court must consider the amount of money at stake.  <u>Eitel</u>, 782 F.2d at 1471-72.  In the Complaint, Plaintiffs pray for injunctive relief and statutory damages in an amount of up to $150,000 for each copyright infringed if Defendants' acts are found to be willful and statutory damages in an amount of up to $2,000,000 for each trademark infringed if Defendants' acts are found to be willful.  Compl. at Prayer.  By this motion, Plaintiffs seek permanent injunctive relief, a reasonable request of $600,000.00 in copyright statutory damages as provided for in 17 U.S.C. § 504(c), $300,000.00 in trademark statutory damages, attorneys' fees of $15,600.00, and interest on the judgment, despite having grounds to request significantly higher damages.  While the sum of money at stake in the present case is significant, it is warranted in light of Defendants' wholesale, broad reaching, and willful activities which continued even after service of notices of Plaintiffs' claims.

b.    <u>Possibility of Prejudice</u>:  The fourth <u>Eitel</u> factor considers whether Plaintiffs will suffer prejudice if default judgment is not entered.  <u>Eitel</u>, 782 F.2d at 1471-72.  In light of the fact that Defendants declined to answer Plaintiffs' Complaint, and that default was entered, thereby admitting the averments of the Complaint, Plaintiffs will likely suffer prejudice if default judgment is not entered,

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

because Plaintiffs would effectively be without further options of recourse against Defendants.

   c. <u>Possibility of Dispute</u>:  The fifth <u>Eitel</u> factor requires the Court to consider the possibility of dispute as to any material facts in the case.  Again, upon entry of default, all well-pleaded facts in the complaint are taken as true except those relating to damages.  <u>See</u> <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987); Fed. R. Civ. P. 8(d).  Here, Plaintiffs filed a well-pled Complaint alleging the facts necessary to establish all of their claims and a Request for Entry of Default on or about July 31, 2023.  Docket Nos. 1, 19.  The Court Clerk entered Defendants' defaults on or about August 3, 2023.  Docket No. 20.  As Plaintiffs' factual allegations are presumed true, no genuine dispute exists as to any material facts.

   d. <u>Possibility of Excusable Neglect</u>:  Under the sixth <u>Eitel</u> factor, the Court considers the possibility that Defendants' defaults resulted from excusable neglect.  Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present its objections before a final judgment is rendered.  <u>Mullane v. Central Hanover Trust Co.</u>, 339 U.S. 306, 314 (1950).   In addition to serving the Defendants with the Summons and Complaint, Plaintiffs also notified Defendants' prior settlement counsel by telephone, email and mail regarding these proceedings, the Defendants' default status, and the Court's Order to Show Cause Re: Dismissal Re: Lack of Prosecution ("OSC") requiring Plaintiffs to file a Request for Default, Docket No. 18.  <u>See</u> Request for Entry of Default, Docket No. 19.  Plaintiffs also mail-served Defendants, to the address where service of process was effected, a copy of Plaintiffs' Request for Entry of Default, as well as the Clerk's Notice of Entry of Default.  <u>Id.</u>; Wang Decl. at ¶¶ 6-7.  Defendants' voluntary decision to allow default to be entered contradicts any argument for excusable neglect.

The facts of this case are dissimilar from those in <u>Eitel</u>, where that defendant's failure to answer constituted excusable neglect as the defendant believed the litigation was over due to a final settlement agreement that subsequently dissolved. The defendant in <u>Eitel</u> soon thereafter filed an answer and counterclaim, even though it was beyond the 20-day period.  <u>Eitel</u>, 782 F.2d at 1472.  The Defendants in the present case have failed to act despite all opportunity to do so, with full knowledge that a lawsuit was filed against them and that it was their responsibility to respond.

    e. <u>Policy for Deciding on the Merits</u>:  The seventh <u>Eitel</u> factor takes into account the preference of the Federal Rules for deciding cases on the merits. <u>Eitel</u>, 728 F.2d at 1472.  However, "this preference, standing alone, is not dispositive."  <u>Kloepping,</u> 1996 U.S. Dist. LEXIS 1786, at *10.  "While the Federal Rules favor decisions on the merits, they also allow for the termination of cases before the court can reach the merits. . . . [t]hus, the preference to decide cases on the merits does not preclude a court from granting "default judgment."  <u>Id</u>.  Under Fed. R. Civ. P. 55(a), default judgments are allowed.  Here, Defendants failed to answer Plaintiffs' Complaint or to otherwise appear in the action.  Further, the Clerk has entered Defendants' default.  Allowing Defendants, who failed to defend this action, to proceed to trial would greatly prejudice Plaintiffs.  Judgment against Defendants is proper at this time.

**B.** **<u>Plaintiffs Have Met The Procedural Requirements For Entry Of A Default Judgment.</u>**

    Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a).  <u>Kloepping v. Fireman's Fund</u>, <u>supra</u>, 1996 U.S. Dist. LEXIS 1786 at *3-4.  Applications for default judgment generally require the moving party state:  (1) when and against which party default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

Servicemembers Civil Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.  All of these requirements have been met, as set forth in Plaintiffs' Notice of Motion for Default Judgment.

Plaintiffs have complied with Fed. R. Civ. P. 54(c) and 55(a).  In the pending action, Plaintiffs served Defendants on or about June 4, 2023, and the Clerk entered Defendants' default on August 3, 2023.  Docket Nos. 15-17, 20.  Further, the individual Defendants are not infants, incompetent persons, in the military, or otherwise exempt under the Servicemembers Civil Relief Act.  Wang Decl. at ¶¶ 8-9.  Plaintiffs do not request relief that differs from or exceeds that prayed for in the Complaint.

**C.**     **<u>Plaintiffs Are Entitled To A Permanent Injunction.</u>**

A plaintiff is entitled to a permanent injunction against a defendant when it can demonstrate:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction. <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

"Irreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." <u>Christopher Phelps & Assocs., LLC v. Galloway</u>, 492 F.3d 532, 544 (4th Cir. 2007).  The same rationale applies to trademarks where the Supreme Court has held that "[b]ecause trademarks desirably promote competition and the maintenance of product quality, Congress determined that 'a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them.'" <u>Park 'n Fly v. Dollar</u>

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

<u>Park & Fly</u>, 469 U.S. 189, 194 (1985), *citing* S. Rep. No. 1333 at 6.  Plaintiffs have alleged in its Complaint, and have presented specific evidence, that Defendants have infringed their exclusive copyright and trademark rights by, *inter alia*, willfully and knowingly manufacturing, importing, distributing, advertising, offering for sale and/or selling a variety of merchandise featuring Plaintiffs' Properties despite actual notice of their unauthorized conduct, causing irreparable injury to Plaintiffs.  Compl. at ¶¶ 3, 18-47; Wang Decl. at ¶¶ 2-7; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 6-9, Ex. K-M.

Further, monetary damages are inadequate to compensate Plaintiffs for this injury caused by Defendants' sales of clearly unauthorized and/or inferior product which cannot compare with the quality of their authentic counterparts.  <u>Universal City Studios, Inc. v. Film Ventures International, Inc.</u>, 543 F. Supp. 1134, 1139 (C.D. Cal. 1982).  Moreover, monetary damages are inadequate to compensate Plaintiffs as Defendants failure to respond or otherwise appear in this action does not mean that Defendants have stopped infringing Plaintiffs' Properties.  <u>Jackson v. Sturkie</u>, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting permanent injunction as part of default judgment in copyright infringement action in part because "Defendant's lack of participation in this litigation has given the court no assurance that Defendant's infringing activity will cease.").  Defendants have knowingly continued their unlawful sales despite numerous notices.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Wang Decl. at ¶¶ 2-4.

Moreover, the balance of hardships clearly weighs in favor of entry of a permanent injunction.  Defendants have willfully and knowingly sold infringing products reaping the benefits of Plaintiffs' Properties with little to no cost to Defendants.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Wang Decl. at ¶¶ 2-4; Suemori Decl. at ¶¶ 7-8, Ex. M.  Plaintiffs, on the other hand, have been irreparably harmed and will continue to be irreparably harmed by the unapproved use of their properties and insertion of this inferior product into the

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

stream of commerce, losing both profits and goodwill.  Suemori Decl. at ¶ 9.  Unless a defendant can irrefutably demonstrate that it has ceased or will immediately cease its infringing actions, a permanent injunction should be granted by the Court.  <u>Polo Fashions, Inc. v. Dick Bruhn, Inc.</u>, 793 F.2d 1132, 1135 (9th Cir. 1986); <u>see also William R. Warner & Co. v. Eli Lilly & Co.</u>, 265 U.S. 526, 532 (1924) (a plaintiff is "entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted").  If a defendant does not intend to infringe in the future, a permanent injunction would not harm them; if they do infringe, the injunction provides substantial protection to the plaintiff.  *See* <u>Polo Fashions, Inc.</u>, 793 F.2d at 1135-36.  Given Defendants' refusal to turn over their infringing inventory and their failure to participate in this action and produce any evidence to the Court that they intend to cease from their infringing activities, the balance of hardships clearly favors entry of a permanent injunction.

Finally, the public interest would be served by entry of a permanent injunction against Defendants.  Again, Defendants have willfully and knowingly inserted inferior product which infringes Plaintiffs' Properties into the stream of commerce. Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Wang Decl. at ¶¶ 2-4; Suemori Decl. at ¶¶ 7-8, Ex. M.  "The public interest is served in protecting the holders of valid copyrights from infringing activity…"  <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 315 F.3d 1039, 1042 (8th Cir. 2003); <u>see also</u> <u>West Pub. Co. v. Mead Data Cent., Inc.</u>, 799 F.2d 1219, 1229 (8th Cir. 1986).  Defendants are appropriately enjoined from further infringement.

**D.**     <u>**Plaintiffs Are Entitled To Statutory Damages Based On Defendants'**</u> <u>**Willful Infringement Of Their Copyrights and Trademarks**</u>.

An award of statutory damages for both copyright and trademark infringement does not constitute an impermissible double recovery.  *See* <u>Nintendo of Am., Inc. v. Dragon Pac. Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994) ("Congress created two

separate statutory schemes to govern copyrights and trademarks; in order to effectuate the purposes of both statutes, damages may be awarded under both."). Here, where the properties are not duplicative and address different rights, statutory damages awards for both copyright and trademark infringement is appropriate.

Section 504(c) of the Copyright Act allows a plaintiff to elect either statutory damages or actual damages for copyright infringement.  17 U.S.C. § 504(c)(1). Plaintiffs are entitled to increased statutory damages awards of up to One Hundred Fifty Thousand Dollars ($150,000.00) per infringement for willful infringement.  17 U.S.C. § 504(c)(2); A & M Records, Inc. v. General Audio Video Cassettes, Inc., 948 F. Supp. 1449, 1457 (C.D. Cal. 1996).  Despite having ample grounds to seek recovery for a higher number of copyrights and enhanced willful damages, Plaintiffs seek and are entitled to an award under the Copyright Act of the reasonable amount of $600,000.00, or $30,000.00 for each of not less than twenty of Plaintiffs' copyrights, for the Defendants' intentional infringement.

Section 1117 of the Lanham Act allows a plaintiff to elect either statutory damages or actual damages for infringement. 15 U.S.C. § 1117. Plaintiffs elect statutory damages.  Since Defendants acted willfully, Plaintiffs are entitled to increased statutory damages awards of up to Two Million Dollars per counterfeit mark per type of goods or services sold, offered for sale, or distributed.  15 U.S.C. § 1117(c)(2).  In light of Defendants' willful activities, Plaintiffs are entitled to a significant but warranted $300,000.00 trademark damages award from the Defendants for a single trademark, but are requesting $100,000.00, an amount within the non-willful range, for each of three trademarks infringed.  Playboy Enter. Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1275 (9th Cir. 1982) ("[I]t is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.").  Here, Plaintiffs may never know the true extent of Defendants' sales or of their operation, but even with the limited record

adduced, Defendants were engaged in a successful counterfeiting operation which had high volume and wide-reaching sales.

Moreover, as co-conspirators, Defendants are properly jointly and severally liable.  "Joint tortfeasors are jointly and severally liable for compensatory damages." Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1023 (9th Cir. 1985) (assessing trademark damages, overruled on other grounds) (citations omitted); see also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d 936, 946-47 (9th Cir. 2011).  Defendants' worked together via their network of stores to maximize their infringing sales.  Compl. at ¶¶ 3, 14-47.  Defendants should therefore be held jointly and severally responsible for their actions.

### 1.    Defendants' Conduct Was Willful.

Defendants have elected not to defend this case and dispute any of Plaintiffs' allegations in the Complaint.  Thus, in light of Defendants' default, their willfulness as pled in the Complaint is admitted.  Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (allegation of willfulness deemed admitted on default).

Moreover, the limited record that Plaintiffs are in a position to adduce (because they were denied an opportunity to conduct discovery as a result of Defendants' defaults), provides evidence of Defendants' willfulness.  Although the Copyright Act is silent as to the definition of willful infringement, "a defendant acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement."  A & M Records, Inc., 948 F. Supp. at 1457 citing Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1335-36 (9th Cir. 1990).  Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly.  N.A.S. Import Corp. v. Alentino, Ltd., 968 F.2d 250, 252 (2d Cir. 1992).

In this case, Defendants' conduct of offering for sale, manufacturing, distributing, and/or selling numerous products all bearing unauthorized near identical

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

copies of Plaintiffs' popular characters and artwork alone evidences their willfulness. Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 6-9, Exs. K-M.  Further, despite repeated notices of their infringement via cease and desist letters and numerous correspondence with Defendants' representatives, Defendants' ongoing and unauthorized activity continued.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 7-9, Exs. K-M; Wang Decl. at ¶¶ 2-4.  Sales of Defendants' infringing product that included co-branded "Sanrio / Rightlites" product that Defendants knew they had no license or permission to manufacture continued unabated despite Plaintiffs' numerous notices.  Id. Defendants have never appropriately responded for their actions and continue to profit off of the repeated infringement of Plaintiffs' Properties.  Id.  Defendants' deliberate copying of Plaintiffs' Properties on a variety of products, their lack of cooperation when served with pre-filing cease and desist requests, as well as their ultimate default in this case, all support a finding of willfulness.

**2.    Plaintiffs Are Entitled To $600,000.00 For Defendant's Willful Copyright Infringement.**

Plaintiffs seek $600,000.00 in copyright damages.  This is well within the statutory limits pursuant to the Copyright Act for even non-willful conduct.  This amount is properly awarded given (i) Defendants' willful conduct; and (ii) Defendants' blithe disregard for the process of this Court.

Section 504(c) provides, in pertinent part:

> "(1)    Except as provided by clause (2) of this subsection, the copyright owner may elect…to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work,…in a sum of not less than $750 or more than $30,000 as the court considers just. . .

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

(2)    In a case where the copyright owner sustains the
burden of proving, and the court finds, that infringement
was committed willfully, the court in its discretion may
increase the award of statutory damages to a sum of not
more than $150,000."

17 U.S.C. § 504(c)(1)-(2).

In determining such an award, the Court <u>may</u> consider such factors as "the
expenses saved and profits reaped by the defendants in connection with the
infringement, the revenues lost by the plaintiff as a result of the defendant's conduct,
and the infringer's state of mind – whether willful, knowing, or merely innocent."
<u>Lamb v. Starks</u>, No. CV -95-1732-JLQ, 1997 U.S. Dist. LEXIS 11369, at *6 (N.D.
Cal. Jul 2, 1995) <u>citing</u> 4 Nimmer & Nimmer, <u>Nimmer on Copyright</u>, §14.04[b][1][a]
(2002).  The Court has "wide discretion in setting the amount of statutory damages,
'constrained only by the specified maxima and minima'" of the Copyright Act.
<u>Lamb</u>, 1997 U.S. Dist. LEXIS 11369, at *5 <u>quoting</u> <u>Harris v. Emus Records Corp</u>.,
734 F.2d 1329, 1335 (9th Cir. 1984).  Even for "uninjurious and unprofitable
invasions of copyright," an award of $30,000 per copyright infringed is appropriate
to "vindicate the statutory policy" of protecting Plaintiffs' investments in its
copyrighted works and serving as a deterrent to future acts of infringement.  <u>F. W.</u>
<u>Woolworth Co. v. Contemporary Arts, Inc.</u>, 344 U.S. 228, 233 (1952).

The Defendants offered for sale, manufactured, distributed, and/or sold
numerous items bearing near identical duplicates of Plaintiffs' world-famous
characters and artwork.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J;
Suemori Decl. at ¶¶ 6-9, Exs. K-M.  Defendants run a network of infringing store
locations, actively advertising, offering for sale, manufacturing and/or distributing a
multitude of unlicensed items including co-branded items using Plaintiffs' well-
known characters and trademarks to advertise on their business cards and shopping
bags.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

¶¶ 6-9, Exs. K-M.  Despite service of cease and desist requests and numerous exchanges with Defendants' representatives, Defendants' ongoing and unauthorized activity continued.  Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 7-9, Exs. K-M; Wang Decl. at ¶¶ 2-4.  Given Defendants' defaults here, Plaintiffs are unable to learn the true extent of Defendants' infringement but Plaintiffs, through their extensive investigations, have confirmed both the wide scope of Defendants' infringement and their capacity to infringe. Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 7-9, Exs. K-M.  Thus, the amount of $600,000.00 requested by Plaintiffs is entirely reasonable, given the size and reach of Defendants' operation, Defendants' willful behavior, and their blatant disregard for the Court.

If this Court were to award Plaintiffs only minimal copyright damages, then Defendants in this action, as well as future defendants, would be encouraged to illegally obtain and sell counterfeit merchandise bearing unauthorized copies of Plaintiffs' copyrighted works and to ignore any legal actions taken by Plaintiffs against them.  The granting of the requested statutory damage award at this time will act to deter Defendants (and others) from violating Plaintiffs' copyrights, and otherwise violating Plaintiffs' rights with relative impunity.

Defendants have chosen to permit the entry of their default.  Because of Defendants' defaults, Plaintiffs have been left with no choice but to seek an award of statutory damages.  Based upon Defendants' systematic and willful acts, Plaintiffs are entitled to an award of copyright statutory damages in the reasonable amount sought of $600,000.00 against Defendants.

### 3.    Plaintiffs Are Entitled To $300,000.00 For Defendant's Willful Trademark Infringement.

Plaintiffs seek a reasonable award under the Lanham Act of $300,000.00 for the willful infringement of three of their trademarks from Defendants.  The amount sought is properly awarded given (i) Defendants' willful conduct; and (ii)

Defendants' blithe disregard for the process of this Court. See 15 U.S.C. § 1117(c)(1)-(2). In determining such an award, the Plaintiffs must establish that: (1) Defendants intentionally used a counterfeit mark  in commerce- defining "counterfeit mark" as, an identical, non-genuine mark, in use by Plaintiffs and registered in the same class of goods complained of without Plaintiffs' prior authorization; (2) Knowing the mark was counterfeit; (3) In connection with the sale, offering for sale, or distribution of goods; and (4) Its use was likely to confuse or deceive.  State of Idaho Potato Commission v. G &T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005) (re certification marks).

As complained of in the Complaint and supported by the record, Defendants' use constituted counterfeiting as they offered and sold unauthorized products using counterfeit depictions of Plaintiffs Trademarks on their packaging and labeling, that were likely to cause confusion or deception to the consuming public, with knowledge.  Compl. at ¶¶ 3, 18-24, 33, 42; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 7-9, Exs. K-M.

Even based upon the limited record available, Defendants' counterfeiting was prolific and widespread and included particularly egregious "co-branded" items. Compl. at ¶¶ 3, 18-24; Holdridge Decl. at ¶¶ 4-13, Exs. A-J; Suemori Decl. at ¶¶ 6-9, Exs. K-M.  Ninth Circuit authority states that even an absolute lack of actual damages should not bear on whether statutory damages are appropriately awarded. "It is clear, however, that a plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.'"  Peer Int'l Corp, 909 F.2d at 1336-37 *citing* Harris, 734 F.2d at 1335; Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1411 (9th Cir. 1993).  Given the reach of Defendants' infringing network of store locations, the evidence of manufacturing of their co-branded items, and the evidence of a significant volume of sales at issue, the requested award of statutory damages appropriately reflects the strength and goodwill of Plaintiffs' marks and the

- 22 -

Defendants' choice to use counterfeit marks on and to promote goods for which
Plaintiffs are well known.

Plaintiffs' request for statutory damages would not be a windfall, but rather
reflects the extensive harm at issue and is also in line "to sanction and vindicate the
statutory policy of discouraging infringement." Peer Int'l Corp., 909 F.2d at 1336-
37. "The Supreme Court has stated that 'even for uninjurious and unprofitable
invasions of [rights] the court may, if it deems it just, impose a liability within [the]
statutory limits'" in furtherance of the important policy of deterrence. Id. at 1337
*citing* F. W. Woolworth Co., 344 U.S. at 233 (copyright context). The statutory
damages framework in the Lanham Act clearly reflects a consciousness and
sensitivity to the plight of rights owners who are otherwise unable to make
counterfeiting unprofitable without the availability of such deterrents.

Deterrence is particularly important in infringement cases such as this. It is
practically impossible for trademark owners to sue and pursue every infringer. Thus,
the Ninth Circuit has held that it is a "per se abuse of discretion to fail to award relief
under § 1117 that is adequate to make willful trademark infringement unprofitable."
Reebok Int'l, Ltd. v. Marnatech Enters., 970 F.2d 552, 559 (9th Cir. 1992)
(trademark damages generally). The granting of the requested statutory damage
award will act to deter Defendants (and others) from violating Plaintiffs' rights.

Defendants have chosen to permit the entry of their defaults through their non-
responses. Because of Defendants' defaults, Plaintiffs have been left with no
effective choice but to seek an award of statutory damages. Based upon Defendants'
systematic, willful acts, Plaintiffs are entitled to an award of statutory damages of
$300,000.00 against Defendants.

**E.    Plaintiffs Are Entitled to Reasonable Attorneys' Fees.**

**1.    Plaintiffs Are Entitled to Attorneys' Fees Under the Copyright Act.**

Section 505 of the Copyright Act provides that the court in its discretion may
"award a reasonable attorney's fee to the prevailing party as part of the costs." 17

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

U.S.C. § 505.  In this Circuit, it has been held that "plaintiffs in copyright actions may be awarded attorney's fees simply by virtue of prevailing in the action; no other precondition need be met, although the fee awarded must be reasonable."  <u>Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.</u>, 886 F.2d 1545, 1556 (9th Cir. 1989).  Moreover, "because section 505 is intended in part to encourage the assertion of colorable copyright claims…, fees are generally awarded to a prevailing plaintiff."  <u>McCulloch v. Albert E. Price, Inc.</u>, 823 F.2d 316, 323 (9th Cir. 1987).  As the prevailing party in this action, Plaintiffs are entitled to reasonable attorneys' fees.

**2.    Plaintiffs Are Entitled to Attorneys' Fees Under Local Rule 55-3.**

"Attorneys' fees are proper when a court grants a default judgment."  <u>Discovery Communications, Inc. v. Animal Planet, Inc.</u>, 172 F. Supp. 2d 1282, 1291 (C.D. Cal. 2001).  Local Rule 55-3 provides a schedule of reasonable attorneys' fees in default actions.  In accordance with Local Rule 55-3, Plaintiffs are entitled to an award of Fifteen Thousand Six Hundred Dollars ($15,600.00) as related to damages awarded for Defendants' copyright infringement only.

**F.    Plaintiffs Are Entitled to Interest on the Judgment**

Plaintiffs are entitled to post-judgment interest.  "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Post-judgment interest shall be calculated pursuant to the statutory rate.  <u>Id.</u>; <u>Enron Power Marketing v. Nevada Power Company</u>, 2004 U.S. Dist. LEXIS 20351, at *21 (S.D.N.Y. 2004) <u>citing</u> <u>Carte Blanche (Singapore) Pte. v. Carte Blanche International</u>, 888 F.2d 260, 269 (2nd Cir. 1989).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that they be awarded permanent injunctive relief enjoining Defendants from further violation of their copyright and trademark rights.  In addition, Plaintiffs request Judgment in their favor in the amount of $600,000.00 in Copyright Act statutory damages,

$300,000.00 in Lanham Act statutory damages, $15,600.00 in attorneys' fees, and post judgment interest.

DATED: September 12, 2023          Wang Law Corporation

                                    By:___/s/ Annie S. Wang-Poloskov_____
                                         Annie S. Wang-Poloskov
                                         J. Andrew Coombs, Of Counsel
                                    Attorneys for Plaintiffs Sanrio Company, Ltd.
                                    and Sanrio, Inc.

## DECLARATION OF HEATHER HOLDRIDGE

I, HEATHER HOLDRIDGE, declare as follows:

1.     I am a private investigator in the State of California, license #PI20517, State of Nevada, license #2702, and State of Arizona, license #1752715.  I make this declaration based upon personal knowledge of matters detailed and/or business records of Brand Security Corporation (BSC) and if sworn as a witness, could testify competently thereto.

2.     I have been an investigator for the past 36 years (since 1987).  I have over 6,000 hours of combined formal instructional and on-the-job training in general investigative practices.  I have over 2,000 hours of training in identifying and differentiating various trademarks.  This training was given by: Yumi Nancy Suemori, Manager of Intellectual Property Protection and Enforcement at Sanrio, Inc.; J. Andrew Coombs, former Senior Intellectual Property Counsel for The Walt Disney Company and its subsidiary, Disney Enterprises, Inc.; David Simpson, former Security Director of Nike, Inc.; Leanne Andrepont, former Paralegal for Nintendo of America; Joseph A. Kadash, former Investigator for Guess?, Inc.; Lisa A. Uriguen, former President of Trademark Management (NBA, NFL, CLC, NHL, MLB & Starter Corp); Hap Wheale, Security Director for Levi Strauss & Co.; Elizabeth Kennedy formerly of USC; Cynthia Holmes of UCLA; Paula Guibault of NFL Properties, Inc.; Robert Kerr, former security director of Bausch & Lomb;; Emile Olaes of Olaes Enterprises, Inc. (Rollin' Hard); Heather McDonald, outside counsel for Rolex USA; Terry Damerel of the Pasadena Tournament of Roses; and Jorge Padron, President of Piloto Cigars, among others.

3.     I have worked approximately one hundred fifty (150) cases in the past year involving the identification of authentic and counterfeit trademarked, copyrighted and/or patented goods.  I have investigated cases and provided evidence leading to issuance of numerous Federal Temporary Restraining Orders as well as criminal and civil seizures of counterfeit goods.  My employer is frequently retained

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

by companies to investigate potential theft and/or counterfeiting of their registered trademarks, copyrights and patents. This formal and informal training has given me experience in identifying and differentiating between goods bearing genuine trademarks, copyrights and other proprietary rights, and infringements and counterfeits.

4.    On or about August 17, 2022, at my direction, a BSC investigator visited "RightLites" located at 112 Plaza Dr, Suite 651, West Covina, CA 91790 ("West Covina Location"). I am informed and believe the investigator observed numerous offers for a variety of alleged "Sanrio" products. Attached collectively hereto as Exhibit A are true and correct photographs from the survey of the West Covina location of "RightLites" on or about August 17, 2022.

5.    On or about August 17, 2022, at my direction, a BSC investigator also visited "RightLites" located at 1 Mills Circle, Ontario, CA 91764 ("Ontario Location"). I am informed and believe the investigator observed numerous offers for a variety of alleged "Sanrio" products at this location as well. Attached collectively hereto as Exhibit B are true and correct photographs from the survey of the Ontario location of "RightLites" on or about August 17, 2022.

6.    On or about October 27, 2022, at my direction, a BSC investigator returned to the "RightLites" Ontario Location. I am informed and believe, the investigator observed numerous offers for a variety of alleged "Sanrio" products at this location and made a sample purchase of a "Hello Kitty Lamp" among other things. Attached collectively hereto as Exhibit C are true and correct photographs from the visit, sample purchase, and a partially redacted receipt from the Ontario Location of "RightLites" on or about October 27, 2022.

7.    On or about October 27, 2022, at my direction, a BSC investigator personally served a cease and desist letter on the employee in charge of the "RightLites" Ontario Location which requested, among other things, voluntary surrender of all unauthorized products. I am informed and believe the employee

called the manager who then asked to speak with the investigator.  I am informed and believe the manager identified herself as Vanessa Luo and informed the investigator that she could not get ahold of the owner, Brent Heltsley.  The employee in charge and Manager Luo refused to surrender any unauthorized items as a result. I am informed and believe the investigator requested Manager Luo inform Mr. Heltsley to contact Plaintiffs' counsel.  Attached hereto as Exhibit D is a true and correct copy of the letter personally served on the Ontario Location of "RightLites" on or about October 27, 2022.

8.    On or about October 27, 2022, at my direction, a BSC investigator returned to the "RightLites" West Covina Location.  I am informed and believe the investigator observed numerous offers for a variety of alleged "Sanrio" products at this location and made a sample purchase of a variety of items.  Attached collectively hereto as Exhibit E are true and correct photographs from the visit, sample purchases, and the partially redacted receipt from the West Covina Location of "RightLites" on or about October 27, 2022.

9.    On or about October 27, 2022, at my direction, a BSC investigator also served a cease and desist letter on the employee in charge of the "RightLites" West Covina Location which requested, among other things, voluntary surrender of all unauthorized products.  I am informed and believe the employee called the same Manager Luo.  I am informed and believe the employee informed the investigator that Manager Luo was unable to reach the owner, "Brent," and they refused to surrender any unauthorized items as a result.  I am informed and believe the investigator requested the employee to inform the owner to contact Plaintiffs' counsel.  Attached hereto as Exhibit F is a true and correct copy of the letter served on the West Covina Location of "RightLites" on or about October 27, 2022.

10.   On or about December 14, 2022, at my direction, a BSC investigator visited "RightLites" located at 1299 Galleria at Tyler, Riverside, CA 92503 ("Riverside Location").  I am informed and believe the investigator observed

numerous offers for a variety of alleged "Sanrio" products.  Attached collectively hereto as Exhibit G are true and correct photographs from my survey of the Riverside Location of "RightLites" on or about December 14, 2022.

11.    On or about January 29, 2023, at my direction, a BSC buyer returned to the "RightLites" Riverside Location.  I am informed and believe the buyer observed numerous offers for a variety of alleged "Sanrio" products at this location and made a sample purchase of a variety of items.  Attached collectively hereto as Exhibit H are true and correct photographs from the visit, sample purchases, and the partially redacted receipt from the Riverside Location of "RightLites" on or about January 29, 2023.

12.    On or about April 20, 2023, at my direction, a BSC investigator returned to the "RightLites" Riverside Location.  I am informed and believe the investigator observed numerous offers for a variety of alleged "Sanrio" products at this location and made a sample purchase of a variety of items.  Some of the items were advertised as "Buy one get one Free!!!"  Attached collectively hereto as Exhibit I are true and correct photographs from the visit, sample purchases, the partially redacted receipt, and business card and business card reflecting a "SeoulTowerSweets@gmail.com" email address obtained from the Riverside Location of "RightLites" on or about April 20, 2023.

13.    On or about April 20, 2023, at my direction, a BSC investigator visited "RightLites" located at 5060 North Montclair Plaza Lane, Suite 5018, in Montclair, CA 91763 ("Montclair Location").  I am informed and believe the investigator observed numerous offers for a variety of alleged "Sanrio" products at this location and made a sample purchase of a variety of items.  Attached collectively hereto as Exhibit J are true and correct photographs from the visit, sample purchases, the partially redacted receipt, and business card reflecting a "SeoulTowerSweets@gmail.com" email address obtained from the Montclair Location of "RightLites" on or about April 20, 2023.

14.    I conducted additional public records research and determined that
"RightLites" is owned and/or operated by Seoul Tower Sweets LLC which lists
Brent Heltsley and Tingting Heltsley as Managers and/or Members all with a stated
address of 2877 W Loma Vista Dr., Rialto, CA 92377.  I am informed and believe
based on public records that TingTing Heltsley's middle name is Luo.

15.    I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on this 8th day of September, 2023, in Los Angeles, California.


*Heather Holdridge*
HEATHER HOLDRIDGE

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

# DECLARATION OF YUMI NANCY SUEMORI

I, YUMI NANCY SUEMORI, declare as follows:

1.      I am the Manager of Intellectual Property Protection and Enforcement at Sanrio, Inc. ("Sanrio").  Sanrio is a wholly owned subsidiary of Sanrio Company, Ltd. ("Sanrio Co.") (Sanrio and Sanrio Co. are collectively referred to herein as "Plaintiffs").  I submit this Declaration in support of Plaintiffs' Motion for Entry of Default Judgment in the matter captioned <u>Sanrio Company, Ltd., et al. v. Seoul Tower Sweets LLC, et al.</u> Case No. CV 23-00924-AB (PVCx).

2.      Sanrio is a California corporation which, since 1976, is and has been the exclusive U.S. licensee for exclusive United States licensee for Sanrio Co.  In addition, between 1976 and 2004, Sanrio was the exclusive U.S. distributor of Plaintiffs' product.  Sanrio is also the master U.S. licensee to several world-famous fanciful characters created, designed, and owned by Sanrio Co.  Sanrio's U.S. license includes the State of California.  In my capacity as Manager of Intellectual Property Protection and Enforcement for Plaintiffs, I am familiar with product manufactured for, distributed or licensed by Sanrio that incorporates the fanciful characters created, developed, and designed by or on behalf of Sanrio Co.  Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

3.      Since 1960, Sanrio Co. is and has been in the business of designing, distributing, and selling products for use by children and adults.  Those products include, without limitation, apparel, bags and accessories, housewares, keychains, electronics, office suppliers, stickers, shoe charms, and related merchandise.

4.      The products which Plaintiffs design, distribute, and sell are distinctive on account of their use and the incorporation of fanciful characters created, developed, designed, and owned by Sanrio Co.  Those characters include, but are not limited to, *Hello Kitty, Keroppi, My Melody, Pochacco, Cinnamoroll, Pompompurin, Kuromi, Badtz Maru, Little Twin Stars, Spottie Dottie, Pekkle, Monkichi,* and *Sugar*

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

*Bunnies*.  These characters are collectively referred to as the "Sanrio Characters." Sanrio Co. has obtained numerous copyright registrations for the Sanrio Characters and other Sanrio Co. works, and of works related thereto.  True and correct copies of a sample of copyright registrations and deposit copy excerpts for the Sanrio Characters is attached hereto as Exhibit K.

5.     Sanrio Co. is also the owner of world-famous registered marks which serve to distinguish Sanrio's products.  Some of those trademarks have been used continuously for over twenty-five years.  Sanrio Co. engaged in extensive advertising and marketing to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality.  True and correct copies of a sample of Sanrio Co.'s trademarks are attached collectively hereto as Exhibit L.

6.     Plaintiffs have used Hello Kitty in connection with products since 1976. Product prominently displaying the Sanrio Characters is sold at hundreds of authorized retail outlets in the United States alone, including 10 Sanrio boutiques exclusively devoted to the sale of merchandise that incorporates the fanciful characters created, developed, designed, and licensed by Sanrio.  In addition, Sanrio operates the website www.sanrio.com dedicated to e-commerce and promotion of the Sanrio line of fanciful characters, specifically including the Sanrio Characters.  Sales of products incorporating the Sanrio Characters is substantial and represents millions of individual units of products each year.  Additionally, Plaintiffs invest significant resources annually into the creation and promotion of products which incorporate the Sanrio Characters.

7.     I have reviewed numerous samples of products sourced from or observed at various "RightLites" locations as outlined in the Declaration of Heather Holdridge.  True and correct photographs of the samples I reviewed are attached as Exhibits A-C, E, G-J, filed concurrently herewith.  As summarized in the attached Exhibit M, which was prepared by me and/or at my direction, I have determined that all of the depicted samples are counterfeit and/or infringing and are not authorized by

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

Plaintiffs.  The products incorporate none of the standard markings or labels expected on authorized product, nor do Plaintiffs, on their own behalf or through their exclusive licensing agent, have any relationship with the Defendants permitting the production, distribution, importation, or sale of these products or uses.  In addition, Plaintiffs have never authorized the Defendants to import, manufacture, offer for sale, or sell any of the samples reviewed or to use Sanrio's Trademarks, Characters or Copyrights in connection with the promotion of Defendants' business and/or products.

8.     Based upon my review of the infringing products and my familiarity with merchandise manufactured and licensed by Plaintiffs, the depictions of the Sanrio Characters on the infringing product are almost identical to the appearance of those characters on merchandise manufactured and licensed by Plaintiffs.  The designs of the infringing products indicate that they are oriented towards the same market as merchandise manufactured and licensed by Plaintiffs.

9.     I believe that any confusion on the part of consumers that results from the Defendants' use of the infringing character artwork and trademarks will undermine Plaintiffs' reputation and harm their goodwill.  Plaintiffs will derive significant revenues from the sale of authorized copies of the Sanrio Characters and Trademarks.  Plaintiffs will suffer irreparable harm if counterfeiters and pirates are allowed to sell their wares.  Further, because Plaintiffs' merchandise is only sold through authorized retail outlets, these sales are likely to damage Plaintiffs' credibility among their own vendors.

10.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of September, 2023, at San Diego, California.

YUMI NANCY SUEMORI

- 33 -

## DECLARATION OF ANNIE S. WANG-POLOSKOV

I, ANNIE S. WANG-POLOSKOV, declare as follows:

1.     I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Central District of California.  I am an attorney for Plaintiffs Sanrio Co., Ltd and Sanrio, Inc. (collectively "Plaintiffs"), in an action styled Sanrio Company, Ltd., et al.  v. Seoul Tower Sweets LLC, et al., Case No. 23-00924-AB (PVCx).  I make this Declaration in support of Plaintiffs' Motion for Entry of Default Judgment as to Defendants Seoul Tower Sweets LLC d/b/a Right Lites and RightLites, Brent Heltsley ("B. Heltsley"), and Tingting Heltsley ("T. Heltsley") (collectively "Defendants"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2.     Prior to the filing of Plaintiffs' Complaint, on behalf of Plaintiffs, my office served multiple cease and desist demands on Defendants' West Covina and Ontario locations on October 27, 2022.  True and correct copies of these letters were attached as Exhibits D and F to the Declaration of Heather Holdridge.

3.     On or about November 2, 2022, I was contacted by attorney Michael Blue who stated he was responding on behalf of Seoul Tower Sweets, LLC, regarding the cease-and-desist letters "RightLites" received on October 27, 2022. Through this settlement counsel, among other things, Defendants assured Plaintiffs that the subject products were removed from shelves.  From November 2, 2022, to April 19, 2023, I sent no less than eleven emails and/or follow ups to Defendants' settlement counsel regarding this matter but none of the disclosures requested were ever received and Defendants' sales continued well after October and November 2022, as set forth in the Declaration of Heather Holdridge.

4.     After Defendants were found to be continuing to engage in unauthorized uses of the Sanrio Properties as late as April 2023, and having not received any

response from Defendants' settlement counsel for several weeks, on or about May 22, 2023, Plaintiffs filed their Complaint against Defendants.  On or about June 4, 2023, Defendants were served with the Summons and Complaint.  Docket Nos. 15-17.

5.      After the filing of the Complaint, I received an email communication from Defendants' settlement counsel on or about May 30, 2023.  After the filing of the Complaint and after Defendants had been served, I continued to correspond with Defendants' settlement counsel and his office regarding a potential settlement, the filed Complaint, Defendants' defaults, and whether settlement counsel was going to represent the Defendants in the litigation.

6.      On or about July 24, 2023, the Court issued its Order to Show Cause Re: Dismissal Re: Lack of Prosecution.  Docket No. 18.  As set forth in my declaration supporting the responsive Request for Entry of Default (Docket No. 19) filed on July 31, 2023, I continued to follow up with Defendants' settlement counsel and sent notices to the Defendants directly after I was informed by Defendants' settlement counsel's office that they had not been retained to represent the Defendants in the litigation.

7.      On or about August 3, 2023, the Clerk entered Defendants' defaults. Docket No. 20.  I am informed and believe that, on or about the same day, my office served a Notice of Entry of Default on Defendants.  To my knowledge, Defendants have not filed a responsive pleading.

8.      I am informed and believe that Defendants B. Heltsley and T. Heltsley are not infants or incompetent persons.

9.      I am informed and believe that Defendants B. Heltsley and T. Heltsley are not currently serving in the military based on my single record request search results via the Official Servicemembers Civil Relief Act (SCRA) Website using Defendants' names and their reported date of birth information as obtained from public records.

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

10.    I request, pursuant to Federal Rules of Evidence, Rule 201(b) that the Court take judicial notice of copies of the Sanrio copyright and trademark registrations attached hereto as Exhibits K and L.

11.    I am informed and believe (and as reflected on proofs of service attached to the moving papers), that the Notice of Motion and supporting papers are being served on the Defendants where service of process was effected, on September 12, 2023.

12.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of September, 2023, in La Cañada Flintridge, California.

/s/ Annie S. Wang-Poloskov

ANNIE S. WANG-POLOSKOV

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC, et al.:
Notice and Motion for Default Judgment

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, and not a party to the below-entitled cause. I am employed by a member of the Bar of the United States District Court Central District of California. My business address is 1150 Foothill Boulevard, Suite E, La Cañada Flintridge, California 91011.

On September 12, 2023, I served the:

NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATIONS AND EXHIBITS IN SUPPORT

[PROPOSED] ORDER

[PROPOSED] JUDGMENT PURSUANT TO ENTRY OF DEFAULT

in the following action:

Sanrio Co., Ltd., et al. v. Seoul Tower Sweets LLC d/b/a Right Lites and RightLites, et al.

__x__   by placing a true and correct copy thereof in an envelope to be immediately sealed thereafter. I am readily familiar with the office's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on the same day with postage thereon fully prepaid at La Cañada Flintridge, California, in the ordinary course of business. I am aware that on motion of the party served, service may be presumed invalid if the postal cancellation date or postage meter is more than one day after the date of deposit for mailing in affidavit.

| | |
|---|---|
| Brent Heltsley<br>2877 W Loma Vista Dr<br>Rialto, CA 92377 | Tingting Heltsley<br>2877 W Loma Vista Dr<br>Rialto, CA 92377 |
| Seoul Tower Sweets LLC d/b/a Right Lites and RightLites<br>2877 W Loma Vista Dr<br>Rialto, CA 92377 | Courtesy Copy:<br>*michael.blue@bluelawgroup.com*<br>Michael Blue<br>The Blue Law Group Inc.<br>8599 Haven Ave., Suite 201<br>Rancho Cucamonga, CA 91730 |

Place of mailing: La Cañada Flintridge, California.

Proof of Service
Page 2 of 2

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on September 12, 2023, at La Cañada Flintridge, California.

_____
Katrina Akim