UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ED CV 23-00924-AB (PVCx) | Date: | November 22, 2023 |
|---|---|---|---|

| Title: | Sanrio Company, Ltd. et al. v. Seoul Tower Sweets LLC et. al. |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER <u>GRANTING</u> MOTION FOR DEFAULT JUDGMENT [Dkt. No. 22]

Before the Court is Plaintiffs Sanrio Company, Ltd. and Sanrio, Inc. (collectively "Plaintiffs") Motion for Default Judgment ("Motion," Dkt. 22). No opposition was filed. For the following reasons, the Motion is **GRANTED.**

### I. PLAINTIFFS' COMPLAINT AND PROCEDURAL BACKGROUND

Plaintiffs' Complaint (Dkt. 22) alleges claims for copyright infringement, trademark infringement, and unfair competition against Defendants arising out of the "manufacturing, displaying, distributing, advertising, selling and/or offering" (Dkt. 22 at 4:7) of items ("Infringing Items") that allegedly infringe on Plaintiffs' intellectual property ("Plaintiffs' Properties" or "Properties").

Defendants were served with the Summons and Complaint on June 4, 2023. (Dkt. 15-17). Defendants did not answer, or in any way respond. Plaintiffs filed their Request for Entry of Default on July 31, 2023 (Dkt. 19) and the Clerk entered this Default on August 3, 2023 (Dkt. 20). Notice thereof was served on September

12, 2023. *See* Wang Decl. (Dkt. 22). To date, Defendants have not filed any responsive pleading.

Now before the Court is Plaintiffs' Motion for Default Judgment, seeking judgment on all claims, permanent injunction, statutory damages plus interest, and attorneys' fees.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("the Rule") 55(b) authorizes a district court to grant default judgment after the Clerk of the Court enters default under Rule 55(a). Local Rule 55-1 requires the party seeking default judgment to file a declaration establishing (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice.

Once default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *See* Fed. R. Civ. Proc. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Granting or denying an application for default judgment is within the district court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). The Ninth Circuit has directed courts to consider several factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (reciting *Eitel* factors). Notwithstanding the entry of default, the Court must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default").

## III.   DISCUSSION

### A. Procedural Requirements

The procedural requirements of Local Rule 55-1 are met. Plaintiffs served the summons and complaint on Defendants on June 4, 2023 (Dkt. 15-17). No Defendant has appeared, nor has any Defendant filed any responsive pleading. Plaintiffs filed a declaration of counsel attesting to the remaining elements of Local Rule 55-1, *i.e.*, that neither Defendant is a minor, infant, or otherwise incompetent person, and that the Servicemembers Civil Relief Act does not apply. *See* Wang Decl. at 35:8-9. (Dkt. 22).

### B. *Eitel* Factors

The Court finds that the *Eitel* factors favor entering default judgment for Plaintiff.

#### 1.  Possibility of Prejudice to Plaintiffs

Plaintiffs contends that it is harmed by Defendants' infringement of its registered copyrights. Defendants have not answered the Complaint, and default has already been entered. Plaintiffs will be without recourse and will likely suffer prejudice.

#### 2.  Merits of Plaintiffs' Claims and Sufficiency of Complaint

*Copyright Infringement*

Plaintiffs have adequately alleged and demonstrated with evidence that Defendants have infringed upon its registered copyright. To prove copyright infringement, a plaintiff must show: (1) ownership of the copyright, and (2) that defendants copied protected elements of the work. *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990). Registration of the copyrighted material before its first publication or within five years after first publication is *prima facie* evidence of the validity of the copyright. 17 U.S.C. §410(c).

Here, Plaintiffs alleged their ownership of the Plaintiffs' Properties, and maintains active copyright registrations with the United States Copyright Office. *See* Dkts. 22-4; 22-5; 22-6; 22-7; 22-8, Exhibit M; 22-10, Exhibit A. These registrations include popular characters, and variations thereof, like "Hello Kitty", "Keroppi", and "Kuromi". Thus, the first prong of the *Shaw* test is met.

Plaintiffs also filed evidence showing that Defendants copied the Plaintiffs' Properties and sold items bearing the characteristics and design of Plaintiffs' Properties. *Id*; *see* Dkt. 22-1, Exhibits A-C, E; Dkt. 22-2, Exhibits G-J. The characteristics of Infringing Items sold by the Defendants are virtually identical to, if not exactly the same, as that of Plaintiffs' Properties, as shown by the side-by-side comparison. *See* Dkt. 22-8, Exhibit M. The Court has examined the Exhibits and finds that the Infringing Items depict characters that are strikingly similar to the Plaintiff Properties. This is sufficient to establish copying. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 424 n.2 (9th Cir. 1987) ("Proof of striking similarity is an alternative means of proving 'copying' where proof of access is absent"), cert. denied, 484 U.S. 954 (1987). Thus, the second prong of the *Shaw* test is met.

*Trademark Infringement*

Plaintiffs have also adequately alleged and demonstrated with evidence that Defendants have infringed upon its trademark. To prove trademark infringement, a plaintiff must establish its ownership of a valid, protectable mark and that the Defendant's use is likely to cause confusion. *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Registration of a mark on the principal register is "prima facie evidence… of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce…" 15 U.S.C. § 1115(a); *see also Applies Information Sciences*, 511 F.3d at 970. In assessing the second prong – the likelihood confusion – the Ninth Circuit has adopted the *Sleekcraft* test, which looks to: the strength of the mark, the proximity of the goods, the similarity of the marks, evidence of actual confusion, the marketing channels used, the types of goods and the degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-54 (9th Cir. 1979). No one factor is dispositive. *Id.* at 353.

Here, Plaintiffs' Complaint sufficiently pleads Plaintiffs' claim for trademark infringement pursuant to 15 U.S.C. § 1115. Plaintiffs submitted evidence establishing trademark rights. *See* Dkt. 22-8, Exhibit L. Plaintiffs have active registrations with the United States Patent and Trademark Office, including registrations for the wordmark "Hello Kitty", the design mark for character of Hello Kitty, the wordmark "Sanrio" with the stylized heart. *Id*; *see also* 22-10, Exhibit B.

Plaintiffs allege that Defendants adopted and used the trademarks to sell

their unauthorized products, and in doing so, are likely to cause confusion to consumers as to the products' source. Having reviewed the photographic evidence and other exhibits, this Court agrees. *See* Dkt. 22-1, Exhibits A-C, E, G-J; 22-8, Exhibit M. Applying *Sleekcraft*, the Court finds that Plaintiffs' Properties own strong, widely recognizable trademarks (factor 1), that the products sold by Defendants, which include backpacks, stuffed animals, clothing, and other knick-knacks, overlap, or are likely to overlap, with the class of goods for which Plaintiffs have registrations (factor 2), that the distinct appearance of the Plaintiffs' Properties are near matches to the appearance of the Infringing Items (factor 3), that there is overlap in the primary retail markets of sale (factor 5), that the exactness of the duplication is such that consumers are unlikely to be able to differentiate regardless of care (factor 6), and that the exactness of the duplication suggests an intention to confuse (factor 7).

Whether consumers have actually been confused (factor 4) is less apparent but based upon this Court's assessment of the side-by-side comparison of the Infringing Items and the Plaintiffs' Properties, actual confusion is likely. Regardless of this conclusion, actual confusion is helpful, but not necessary. Similarly, whether it has been established that there is a likelihood of expansion is also not necessary (factor 8). Plaintiffs' argument that Defendants' operation of an "illegitimate business involving counterfeit goods" (Dkt. 22 at 10:4-5) does not necessarily tip this factor in Plaintiffs' favor. Thus, this factor is neutral.

### *Unfair Competition*

Success on a claim for unfair competition requires similar demonstrations as the claim above. Indeed, the Ninth Circuit has concluded that "[w]here… a plaintiff's § 43 unfair competition claim is based on alleged infringement of a registered mark, the legal analysis under the two sections is essentially identical.". *Lodestar Anstalt v. Bacardi & Company Limited*, 31 F.4th 1228, 1245 (9th Cir 2022); *see also Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks.") (internal quotations omitted). Thus, likelihood of confusion is evident as set forth above.

### 3. Sum of Money at Stake

The Court must balance "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F.

Supp. 2d 1172, 1176 (C.D. Cal. 2002). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173 at *12 (N.D.Cal. 2007).

Here, Plaintiffs seek $600,000 in copyright statutory damages and $300,000 in trademark statutory damages, both pursuant to this Court's finding that the alleged infringement was "willful". *See* 17 U.S.C. § 504 (c)(2)(allowing for higher statutory damages in cases of willful copyright infringement) and 15 U.S.C. §1117 (c)(2)(allowing for higher statutory damages in case of willful trademark infringement). Plaintiffs claim they make this request "despite having grounds to request significantly higher damages." Dkt. 22 at 11. Plaintiffs also seek attorneys' fees of $15, 600, pursuant to Local Rule 55-3, and interest on the judgement pursuant to 28 U.S.C. § 1961(a). The Court finds that it is reasonable for Plaintiffs to seek statutory damages plus interest, and attorneys' fees, and that the amounts sought are within the statutory ranges.

### 4. Possibility of Dispute

As discussed, Plaintiffs have adequately alleged copyright infringement, trademark infringement, and unfair competition, and Defendants have failed to defend this action, resulting in the entry of their default. As such, Defendants have admitted all material facts in the Complaint Furthermore, Plaintiffs presented evidence substantiating its claims. Therefore, no factual disputes exist that would preclude the entry of default judgment.

### 5. Possibility of Excusable Neglect

The possibility of excusable neglect in this case is slim. Defendants had adequate notice of this action because they were served with the Summons and Complaint. Plaintiffs also say they notified Defendants' prior settlement counsel by telephone, email, and mail regarding the proceedings. *See* Dkt. 22 at 12. Viewing the entire history of this case, the Court finds that Defendants had adequate notice and their defaults are not the result of excusable neglect.

### 6. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b) indicates, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Defendant's failure to answer Plaintiffs' Complaint makes a decision on

the merits impractical, if not impossible." *Id.* Since Defendants have failed to defend, the policy of favoring decisions on the merits does not preclude the entry of default judgment in this case.

Considering the foregoing, the Court finds that all of the *Eitel* factors weigh in favor of entering default judgment.

### C. Plaintiffs' Recovery

Plaintiffs seek permanent injunction, statutory damages plus interest, and attorneys' fees.

### 1. Permanent Injunction

Under 17 U.S.C. § 502(a), this Court is empowered to grant a permanent injunction "as it may deem reasonable to prevent or restrain infringement of a copyright." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 518 F. Supp. 2d 1197, 1208 (C.D. Cal. 2007) (internal quotations omitted). Similarly, the Lanham Act permits a court to enter an injunction to "prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office", i.e., trademarks. *See* 15 U.S.C § 1116(a).  "An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 518 F. Supp. 2d 1197, 1208 (C.D. Cal. 2007).

The Supreme Court has confirmed that a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). The Ninth Circuit has noted that a finding of copyright or trademark infringement does not automatically warrant an injunction. *See Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.,* 736 F.3d 1239, 1249 (9th Cir. 2013). Furthermore, *actual* irreparable harm must be present, a higher standard than that of a preliminary injunction which requires only a *likelihood* of irreparable harm. *See id*.

Notably, the Ninth Circuit has previously recognized that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

infringement. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180–81 (9th Cir.1088).

  Here, Plaintiffs allege that Defendants have infringed upon their exclusive copyright and trademark rights by "willfully and knowingly manufacturing, importing, distributing, advertising, offering for sale and/or selling a variety of merchandise featuring Plaintiffs' Properties despite actual notice of their unauthorized conduct, causing irreparable injury to Plaintiffs." See Dkt. 22 at 15 (citing Compl. at ¶¶ 3, 18-47; Wang Decl. at ¶¶ 2-7; Holdridge Decl. at ¶¶ 4-13, Exhibits. A-J; Suemori Decl. at ¶¶ 6-9, Exhibits K-M.). Courts have recognized that continued infringement after notice is conduct that supports a finding of irreparable harm. *See e.g.*, *Sennheiser Electronic Corp. v. Eichler*, 2013 WL 3811775 at *10 (C.D.Cal.,2013) (citing *Microsoft Corp. v. Atek 3000 Computer Inc.,* No. 06 CV 6403 SLT (SMG), 2008 WL 2884761 at *5 (E.D.N.Y. July 23, 2008). So, too, will "lost profits and customers, as well as damage to goodwill and business reputation". *Id*; *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp .2d 1072, 1084 (C.D.Cal.2012) ("If an injunction were not granted, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services"). This Court finds that these circumstances are present here and thus concludes that actual irreparable harm has been demonstrated.

  Plaintiffs argue that monetary damages are insufficient; we agree. Monetary damages are inadequate to compensate Plaintiffs because of the continuous nature of Defendants' business. Indeed, it appears as though Defendants' business model is inextricable from its counterfeit offerings. There is nothing in the record to suggest that Defendants will cease, particularly because Defendants have carried on after having received notice.

  The balance of hardships favors Plaintiffs because, as we have previously held, "Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.Supp .2d 1072, 1084 (C.D.Cal.2012).

  Finally, the public interest would be served by entry of a permanent injunction because it is "the right of the public not to be deceived or confused." *AT & T Corp. v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251 at *7 (S.D.Cal. July 27, 1995) (citation omitted); *see also Atek 3000 Computer Inc.,* 2008 WL 2884761 at *5–6 ("[T]he public interest lies in the enforcement of the

principles recognized by Congress in creating the [Copyright and Lanham] Acts, especially the prevention of consumer confusion").

The Court concludes that all four *eBay* factors are satisfied, and thus, Plaintiffs are entitled to a permanent injunction. Permanent injunction, as set forth below, is **GRANTED**.

### 2. Statutory Damages

The Copyright Act authorizes an award of statutory damages of between $750 and $30,000, and up to $150,000 for willful infringement. 17 U.S.C. § 504(c)(1)-(c)(2). "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). The Court's discretion may be guided by the proportionality of the award to the damages suffered by the plaintiff, the nature of the copyright, the circumstances of the infringement, and what would be just in the specific case. *F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232 (1952). For willful trademark infringement, Plaintiffs are entitled to statutory damages awards of up to two million dollars per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 15 U.S.C. §1117(c)(2).

The Ninth Circuit has held that a defendant "acts willfully if he or she knew, had reason to know, or recklessly disregarded the fact that his or her conduct constituted copyright infringement." *A & M Records, Inc. v. Abdallah*, 948 F.Supp. 1449, 1457 (C.D.Cal.,1996). Further, in determining whether to grant an award for willful trademark infringement, a plaintiff must establish that (1) the counterfeit mark was intentionally used in commerce; (2) the defendant knew the mark was counterfeit; (3) the mark was used in connection with the sale of goods; and (4) the defendant was not authorized to the use the mark. *State of Idaho Potato Commission v. G &T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

Here, Plaintiffs seek statutory damages against Defendants in the amount of $600,000, or $30,000, for each of the twenty of Plaintiffs' copyrights for the Defendants' willful infringement. Plaintiffs also seek $300,000, or $100,000, for each of the three trademarks infringed. Plaintiffs request that Defendants are held jointly and severally liable.

As noted frequently in this Order, Plaintiffs allege that the Defendants were engaged in willful infringement, inferred in part by the exactness of the Infringing

Items' duplication of Plaintiffs' Properties and by the continued infringement despite notice. Plaintiffs support these contentions with numerous exhibits, showing side-by-side comparisons, as well as copies of notice to the Defendants. *See, e.g.,* Dkt. 22-1, Exhibits A-C, E, G, H, I, J; 22-8, Exhibit M. Plaintiffs also argue that willfulness is established based upon the Defendants' default. We find these circumstances sufficient to demonstrate intentionality.

Therefore, the Court must determine whether to award the requested statutory damages. The Court find no reason to hesitate. Defendants' sale of counterfeit goods, without authorization and despite notice, is highly likely to have caused consumer confusion and supports an inference of knowledge. As stated above, the record supports a conclusion that a significant, if not majority, of Defendants' business appears to be the sale of fake and unauthorized versions of Plaintiffs' Properties. Thus, the Court **GRANTS** Plaintiffs' request for statutory damages in the amount of $600,000 for copyright infringement and $300,000 for trademark infringement.

### 3. Attorneys' Fees and Interest

Plaintiffs seek an award of attorneys' fees for its copyright infringement claim and an award of interest against Defendants.

### a. Whether Plaintiffs Should Be Awarded Fees for Copyright Infringement

The Copyright Act provides for an award of attorneys' fees to prevailing parties. *See* 17 U.S.C. § 505. "The touchstone of the decision to award attorneys' fees is whether the successful [position], and the circumstances surrounding it, further the Copyright Act's 'essential goals.'" *Tresóna Multimedia, LLC v. Burbank High School Vocal Music Association*, 953 F.3d 638, 653 (9th Cir. 2020), citing *Kirtsaeng*, 579 U.S. at 209. In deciding whether to award attorneys' fees under the Copyright Act, "[c]ourts may consider but are not limited to five factors . . . (1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective reasonableness of the losing party's legal and factual arguments, and (5) the need to advance considerations of compensation and deterrence." *Id.* "However, each of those factors is merely a guidepost in the exercise of the court's 'equitable discretion' and 'courts are not limited to considering them.'" *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *2 (C.D. Cal. 2015) (Birotte Jr., J.), quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996). "When analyzing whether awarding attorneys' fees under the Copyright Act is proper, 'the

most important factor . . . is whether an award will further the purposes of the Act.'" *Microsoft Corp. v. Softwareau.com*, 2016 WL 7647682, at *4 (C.D. Cal. 2016) (Birotte Jr., J.), citing *Mattel, Inc. v, Mattel De Mexico S.A. de C.V.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

Here, the Court finds that, on balance, the factors weigh in favor of the Plaintiffs. Plaintiffs' success can be inferred by Defendants' default. Moreover, the extensive record, inclusive of photographic evidence, suggests that Plaintiffs' pursuit was not frivolous nor objectively unreasonable. Plaintiffs complain of the very behavior the Copyright Act seeks to undermine, and thus, in Plaintiffs pursuing this action, they are properly motivated in effectuating the purpose of the Copyright Act. Finally, the work of Plaintiffs' counsel warrants compensation, and the behavior of Defendants warrants deterrence. Therefore, the Court **GRANTs** Plaintiffs request for attorneys' fees.

For default judgments, courts in this district generally set attorney's fees based on the schedule set forth in Local Rule 55-3 ("the Rule"). For judgements over $100,000 the Rule allows for $5,600 plus 2% of the amount over $100, 000. Here, Plaintiffs are to be awarded $600,000 for its copyright infringement claim, which leaves $500,000 in excess of $100,000. 2% of $500,000 is $10,000. $10,000 plus $5,600 equals $15,600. Plaintiffs rightfully request this amount.

### b. Whether to Award Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. §1961(a). Plaintiffs are entitled to post-judgment interest in accordance with the statutory rate.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiffs' Motion for Entry of Default Judgment against Defendants. The Court **AWARDS** statutory damages of $600,000 for copyright infringement, $300,000 for trademark infringement, and $15,600 in attorneys' fees plus interest. The Court also **GRANTS** Plaintiffs' request for permanent injunction. Plaintiffs are hereby restrained and enjoined from:

> A) Infringing Plaintiffs' Properties, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any merchandise

which features any of Plaintiffs' Properties, and specifically:

i) Importing, manufacturing, distributing, advertising, selling and/or offering for sale the Infringing Products or any other unauthorized products which picture, reproduce, copy or use the likenesses of or bear a substantial similarity to any of Plaintiffs' Properties;

ii) Importing, manufacturing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to any of Plaintiffs' Properties;

iii) Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, the Defendants' customers and/or members of the public to believe, the actions of Defendants, the products sold by Defendants, or the Defendants themselves are connected with Plaintiff, are sponsored, approved or licensed by Plaintiff, or are affiliated with Plaintiff;

iv) Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiff.

Defendants are ordered to deliver for destruction all Infringing Products, and any other unauthorized products which picture, reproduce, copy or use the likenesses of or bear a substantial similarity to any of Plaintiffs' Properties and any labels, signs, prints, packages, dyes, wrappers, receptacles and advertisements relating thereto in their possession or under their control bearing any of Plaintiffs' Properties or any simulation, reproduction, counterfeit, copy or colorable imitations thereof, and all plates, molds, heat transfers, screens, matrices and other means of making the same, at Defendants' expense.

**IT IS SO ORDERED**.